1  James C. Pistorino (SBN 226496)
     james@dparrishlaw.com
2  Parrish Law Offices
3  224 Lexington Dr.
   Menlo Park, CA  94025
4  Telephone: (650) 400-0043

5  Attorneys for Plaintiff

6

7            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
8

9  MR. GARY ZIEROTH as the representative of    ) Case No. 3:20-cv-00172-MMC
   the estate of MRS. SHARON ZIEROTH,           )
10                                              )
                                                )
11      *Plaintiff*                              )
                                                )
12      v.                                       ) PLAINTIFF'S REPLY IN SUPPORT OF
                                                ) MOTION FOR SUMMARY JUDGMENT
13 ALEX AZAR, in his capacity as Secretary of the )
   United States Department of Health and Human )
14 Services,                                     )
                                                )
15      *Defendant*                              )
                                                )
16                                              )
                                                )
17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.      DISCUSSION ..................................................................................................... 2

   A.      CMS 1682-R ............................................................................................... 3

     1.      *CMS 1682-R Issued Illegally, Is Not Supported by Substantial Evidence, Is Arbitrary and Capricious, Etc.* ..................................... 3

     2.      *Mrs. Zieroth Did Not Waive the Argument that  CMS 1682-R Issued Illegally* ........... 3

     3.      *The Secretary Waived a Waiver Defense* ........................................................... 6

   B.      A CGM IS "DURABLE MEDICAL EQUIPMENT" .................................................. 7

     1.      *A CGM Is "Primarily and Customarily Used to Serve a Medical Purpose"* ............... 7

     2.      *A CGM Is "Durable Medical Equipment" / a "Blood Glucose Monitor"* ................... 9

     3.      *The Secretary's New Rationales For Denying Coverage Must Be Rejected* ................ 9

   C.      COVERAGE SHOULD BE ORDERED ................................................................ 10

II.     CONCLUSION ................................................................................................ 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Doe v. Wolf*,
  2020 WL 3128874 (N.D. Cal. June 12, 2020) ........................................................ 11

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) ............................................................................. 5

*In re Two Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litigation*,
  994 F.2d 956 (1st Cir. 1993) ............................................................................ 4

*Jorst v. D'Ambrosio Brothers*,
  2001 WL 969039 (N.D. Cal. Aug. 13, 2001) ........................................................ 8

*Kinslow v. American Postal Workers Union, Chicago Local*,
  222 F.3d 269 (7th Cir. 2000) ............................................................................ 4

*Kisor v. Wilkie*,
  139 S.Ct. 2400 (2019) ..................................................................................... 9

*Magana v. Commonwealth of the Northern Mariana Islands*,
  107 F.3d 1436 (9th Cir. 1997) ........................................................................... 7

*Maupin v. Azar*,
  424 F.Supp.3d 830 (C.D. Cal. 2019) .................................................................. 13

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) ........................................................................................ 5

*Miller v. Drexel Burnham Lambert, Inc.*,
  791 F.2d 850 (11th Cir. 1986) ........................................................................... 5

*Montana Nat'l Bank of Billings v. Yellowstone County, Montana*,
  276 U.S. 499 (1928) ........................................................................................ 5

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mutual Automobile Ins. Co.*,
  436 U.S. 29 (1983) .................................................................................... 10, 11

*N.L.R.B. v. Wyman-Gordon Co.*,
  394 U.S. 759 (1969) ...................................................................................... 13

*Northern Heel Corp. v. Compco Indust., Inc.*,
  851 F.2d 456 (1st Cir. 1988) ............................................................................ 4

*Shalala v. Illinois Council on Long Term Care, Inc.*,
  529 U.S. 1 (2000) ........................................................................................... 5

*Snoqualmie Indian Tribe v. F.E.R.C.*,
    545 F.3d 1207 (9th Cir. 2008) ............................................................................ 11

**Statutes**

42 U.S.C. § 1395hh ...................................................................................... 1, 3, 5
42 U.S.C. § 1395x(n) ...................................................................................... 1, 9
42 U.S.C. § 405(g) ...................................................................................... 11, 12

**Rules**

Fed.R.Civ.P. 8(c) ............................................................................................ 7
Fed.R.Civ.P. 8(c)(1) ...................................................................................... 6

**Regulations**

42 C.F.R. § 405.1063(a) ................................................................................. 3
42 C.F.R. § 405.1063(b) ................................................................................. 3
42 C.F.R. § 405.1108(a) ................................................................................. 5
42 C.F.R. § 405.1110(c)(2) ........................................................................... 11
42 C.F.R. § 410.202 ....................................................................................... 7

1    Plaintiff's motion for summary judgment should be granted.

2    More than 200 days after Plaintiff first filed her motion for summary judgment, after Mrs.

3    Zieroth passed away and her grieving husband was forced to continue the litigation in her name,

4    and more than 70 days after Plaintiff filed her renewed motion for summary judgment, the

5    Secretary finally filed a seven page response to the motion.

6    As set forth in Mrs. Zieroth's motion, summary judgment may be granted for Mrs.

7    Zieroth for three independent reasons: 1) CMS 1682-R issued illegally and the Secretary is

8    barred by statute from giving it effect (as is this Court); 2) the Secretary's construction of the

9    phrase "primarily and customarily used to serve a medical purpose" in CMS 1682-R is legally

10   wrong; and/or 3) a CGM is "durable medical equipment" either pursuant to the regulations or as

11   a "blood glucose monitor" (42 U.S.C. § 1395x(n)) and the Secretary's conclusion otherwise is

12   not supported by substantial evidence, is arbitrary and capricious, and is contrary to law.

13   The Secretary does not dispute the fact the CMS 1682-R issued illegally and that, by

14   attempting to enforce the illegally issued Ruling, the Secretary is defying Congress' mandate that

15   no such rule, requirement, or other statement of policy "shall take effect." *See* 42 U.S.C. §

16   1395hh.  Instead, the Secretary contends that Mrs. Zieroth cannot complain that the Secretary is

17   knowingly violating Congress' command because Mrs. Zieroth did not raise that position before

18   the ALJ and the MAC.  That position is wholly without legal basis.  Under the Secretary's own

19   regulations, both the ALJ and the Medicare Appeals Council were/are barred from determining

20   that CMS 1682-R was/is invalid.  Mrs. Zieroth was not required to engage in futile acts to

21   preserve her right to protest the Secretary's illegal conduct.  Indeed, given that CMS 1682-R

22   issued in violation of a law issued by Congress , the Secretary's reliance on the illegally issued

23   Ruling is also in violation of the law, and that the Secretary asks this Court to violate the statute

as well, Mrs. Zieroth seriously doubts that there could ever be waiver of these *ultra vires* acts.

Beyond the illegal issuance of CMS 1682-R, the Secretary does not contend that the phrase "primarily and customarily used to serve a medical purpose" is ambiguous.  Instead, the Secretary simply offers his own unsupportable construction in the form of the "therapeutic" / "non-therapeutic" / "precautionary" terms of CMS 1682-R.  That approach violates the first cannon of statutory/regulatory construction – determining whether the relevant provision is ambiguous.  Likewise, the Secretary does not contend that the phrases "durable medical equipment" and/or "blood glucose monitor" are ambiguous and, again, simply offers constructions that are not supportable.

Finally, the Secretary closes with a request to remand this case so that the Secretary can have the opportunity to create new bases to deny Mrs. Zieroth's claim.  Under the Secretary's own regulations, the Secretary cannot consider Mrs. Zieroth's claim on any basis other than alleged misapplication of CMS 1682-R (*i.e.*, the basis on which review by the Council was granted).  Thus, a remand to deny Mrs. Zieroth's claim on any other basis would be improper.

Mrs. Zieroth's motion for summary judgment should be granted, the Secretary's motion denied, and coverage ordered.

## I.       DISCUSSION

At base, there are two main issues before this Court: 1) did CMS 1682-R issue illegally (and therefore a rejection based on it is improper); and 2) independently, is a CGM "primarily and customarily used to serve a medical purpose" / "durable medical equipment" / a "blood glucose monitor."

**A.      CMS 1682-R**

> **1.      CMS 1682-R Issued Illegally, Is Not Supported by
> Substantial Evidence, Is Arbitrary and Capricious, Etc.**

The Secretary did not respond to or challenge Mrs. Zieroth's showing that CMS 1682-R

issued illegally, is not supported by substantial evidence, or is arbitrary and capricious.  That is,

the Secretary did not contest that, pursuant to 42 U.S.C. § 1395hh, the Secretary was required to

comply with notice and comment, that the Secretary did not do so, and that pursuant to the

statute, the Ruling "shall [not] take effect."  Mot. at 12-13.

Likewise, independent of the improper issuance of the Ruling, the Secretary did not

contest that the Ruling's purported construction of "primarily and customarily used to serve a

medical purpose" is not supported by substantial evidence, is arbitrary and capricious, and wrong

as a matter of law.  Mot. at 13-17.

Thus, coverage should be ordered.

> **2.      Mrs. Zieroth Did Not Waive the Argument that
> CMS 1682-R Issued Illegally**

Pursuant to 42 C.F.R. § 405.1063(b):

> CMS Rulings are published under the authority of the Administrator, CMS.
> Consistent with § 401.108 of this chapter, *rulings are binding* on all CMS
> components, on all HHS components that adjudicate matters under the
> jurisdiction of CMS, and on the Social Security Administration to the extent that
> components of the Social Security Administration adjudicate matters under the
> jurisdiction of CMS.

(emphasis added).  Thus, under the Secretary's own regulations, neither ALJs nor the Medicare

Appeals Council have any authority to rule on the validity of CMS Rulings.[1]  Indeed, citing this

same regulation in the decision at issue reversing ALJ Midgley, the Council stated: "We, like

---

[1] Indeed, 42 C.F.R. § 405.1063(a) contains a similar provision making all laws and regulations
binding on ALJs and the Council, and therefore immune to validity challenges before them.

ALJs, are bound by CMS Rulings." *See* CAR13.  Even the Secretary's Opposition states: "The Appeals Council found that CMS Ruling 1682-R required [the Council] to deny coverage."  Opp. at 4.

It is fundamental that Mrs. Zieroth cannot waive arguments that both the ALJ and the Medicare Appeals Council are barred from addressing.  That is, Mrs. Zieroth was not required to perform the futile act of asking either the ALJ or the Council to rule on the validity of CMS 1682-R (when both entities are barred from addressing that argument) in order to avoid waiver. *See, e.g., In re Two Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litigation*, 994 F.2d 956, 961 (1st Cir. 1993) ("The law does not require litigants to run fools' errands.  Thus, a party who forgoes an obviously futile task will not ordinarily be held thereby to have waived substantial rights."); *Northern Heel Corp. v. Compco Indust., Inc.*, 851 F.2d 456, 461 (1st Cir. 1988) ("The law should not be construed idly to require parties to perform empty acts or to engage in empty rituals."); *Kinslow v. American Postal Workers Union, Chicago Local*, 222 F.3d 269, 276 (7th Cir. 2000) (a statutory provision "does not require a union member to perform futile acts in order to vindicate his rights."); *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986) ("This circuit does not require a litigant to engage in futile gestures merely to avoid a claim of waiver.").

Likewise, in the related context of exhaustion, the Ninth Circuit has held that prudential exhaustion is not required "if administrative remedies are inadequate or not efficacious, [or] pursuit of administrative remedies would be a futile gesture."  *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  *See also Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (exhaustion not required "when exhaustion would prove futile"); *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) ("Alternatively, an agency may be competent to adjudicate

the issue presented, but still lack authority to grant the type of relief requested."); *Montana Nat'l Bank of Billings v. Yellowstone County, Montana*, 276 U.S. 499, 505 (1928) (no waiver because "any such application utterly futile since the county board of equalization was powerless to grant any appropriate relief[.]").

Here, under the Secretary's own regulations, the ALJ and the Council are bound by CMS Rulings and cannot address the validity of them.  Thus, Mrs. Zieroth could not have waived an argument that the ALJ and Council were precluded from addressing.  The first body with both the authority to rule on the validity of CMS 1682-R and where Mrs. Zieroth has a venue to make that challenge is this Court - where Mrs. Zieroth promptly brought her claim.[2]

That said, Mrs. Zieroth explicitly argued that a CGM is "durable medical equipment" / "primarily and customarily used to serve a medical purpose" (*i.e.*, the very regulation that CMS 1682-R purports to construe) before the Council as well as throughout the appeal process.  *See, e.g.*, CAR29 (to council); CAR526 (on Reconsideration).[3]  Having actually made that argument, Mrs. Zieroth clearly could not have waived it.  Indeed, the Secretary concedes that Mrs. Zieroth argued that to the extent that the Ruling held that a CGM was not "durable medical equipment" it is contrary to the statute and regulations.  Opp. at 4.

---

[2] Moreover, Mrs. Zieroth observes that the notice and comment provisions of 42 U.S.C. § 1395hh are not limited in their application to the Secretary.  Instead, those provisions state that no rule, requirement, or other statement of policy "shall take effect" unless promulgated in accordance with the notice and comment requirements.  That prohibition applies just as much to this Court as to the Secretary.  In this litigation, the Secretary is asking the Court to give effect to CMS 1682-R when that is explicitly barred by statute.  Thus, Mrs. Zieroth seriously doubts that she could ever waive the requirements of the statute.

[3] Pursuant to 42 C.F.R. § 405.1108(a), upon review: "The Council will consider all of the evidence in the administrative record."  Thus, in addition to Mrs. Zieroth's arguments on Reconsideration being listed among the Exhibits to ALJ Midgley's decision (*see* CAR58), the Council had those same arguments before it as part of the Record below.

### 3.     The Secretary Waived a Waiver Defense

Pursuant to FED.R.CIV.P. 8(c)(1), "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: … waiver."   As set forth in the Complaint, Mrs. Zieroth alleged that CMS 1682-R issued in violation of the law and that the denial of her claim on that basis was also improper.  *See, e.g.,* Dkt. #21 at 9, 10, 17.  On May 1, 2020, the Secretary filed his Answer and did not assert waiver as a defense.  *See* Dkt. #22.  Thus, pursuant to the Federal Rules, the Secretary waived a waiver defense.

Despite the text of the Federal Rules, the Ninth Circuit has held that a defendant who fails to raise an affirmative defense in a responsive pleading will still be allowed to raise the defense if it can show that the plaintiff was not prejudiced by the delay.  *See Magana v. Commonwealth of the Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997).  Here, the Secretary made no effort to demonstrate that his delay did not prejudice Mrs. Zieroth.  Thus, on that basis alone, the Secretary failed to meet his burden and waived a waiver defense.

Moreover, the Secretary could simply never show that his failure to raise the defense did not prejudice Mrs. Zieroth and her grieving husband.  As indicated, the first Mrs. Zieroth's representative heard of an alleged waiver defense was:

a)  more than 200 days *after* the initial motion for summary judgment was filed;

b)  *after* Mrs. Zieroth actually passed away;

c)  more than 70 days *after* the renewed motion for summary judgment was filed;

d)  *after* the Secretary moved for a 90-day extension of time to oppose the motion for summary judgment on the grounds that something the Secretary was going to do would effect/obviate the arguments on the motion for summary judgment;

1    e) *after* Mrs. Zieroth opposed the Secretary's motion without knowing that the Secretary
2        intended to assert a waiver defense that would not be effected by subsequent
3        developments; and
4    f) *after* this Court granted the Secretary a 45-day extension to oppose the motion for
5        summary judgment without knowing of the alleged waiver defense that would not be
6        effected by subsequent developments.
7
8    In somewhat similar circumstances, another court in this district held that the failure to comply
9    with FED.R.CIV.P. 8(c) resulted in waiver as a result of prejudice to the plaintiff.  *See Jorst v.*
10   *D'Ambrosio Brothers*, 2001 WL 969039 at *9 (N.D. Cal. Aug. 13, 2001) (Breyer, J.) (plaintiff
11   would be prejudiced when waiver defense raised after, *inter alia*, summary judgment motion
12   prepared).
13        The Secretary waived any waiver defense and coverage should be ordered.
14
15   **B.    A CGM Is "Durable Medical Equipment"**
16        Coverage in this case should also be ordered because a CGM meets the regulatory
17   requirement of being "primarily and customarily used to serve a medical purpose" and/or the
18   statutory requirements of "durable medical equipment" / "blood glucose monitor."  Further, the
19   Secretary's new rationale for denying coverage must be rejected as it was not the rationale used
20   by the Council to deny coverage.
21
22        **1.    A CGM Is "Primarily and Customarily Used to Serve a Medical Purpose"**
23        As set forth in the Council' decision denying coverage and Mrs. Zieroth's opening
24   papers, the Council denied Mrs. Zieroth's claim on the grounds that a CGM is not covered
25   "durable medical equipment" because it does not meet the regulatory requirement of being
26   "primarily and customarily used to serve a medical purpose."  *See* 42 C.F.R. § 410.202; CAR11
27
28

("We begin our analysis with the principle underlying CMS' treatment of CGMs, *i.e.*, that, DME must be 'primarily and customarily used to serve a medical purpose.'").   Relying on the construction of the "primarily and customarily …" phrase set forth in CMS 1682-R, the Council denied Mrs. Zieroth's claim.

As noted in Mrs. Zieroth's papers, the first step in regulatory construction is to determine whether the provision is ambiguous and the phrase "primarily and customarily used to serve a medical purpose" is not ambiguous.   *See, e.g.*, Mot. at 7-8, 15.   Moreover, the Secretary's opposition does not assert that the phrase is ambiguous.   Thus, as stated in the Supreme Court's decision in *Kisor v. Wilkie*, 139 S.Ct. 2400, 2415-6 (2019) - "If uncertainty does not exist, then there is no plausible reason for deference.   The regulation just means what it means – and the court must give it effect, as the court would any law."   Moreover, if a provision is not ambiguous, deferring to any proposed construction by the agency "would permit the agency, under the guise of interpreting a regulation, to create a *de facto* new regulation."   *Id.*

Given the lack of ambiguity in the relevant phrase, the only issue is whether there is substantial evidence to support the Council's conclusion that a CGM is not "primarily and customarily used to serve a medical purpose."   Of course, there is no evidence (much less substantial evidence) to support that conclusion.   No amount of sophistry or obfuscation can change the fact that a CGM has *only* a medical purpose (and an important one at that).

Likewise, the Secretary's decision that a CGM is not "primarily and customarily used to serve a medical purpose" is arbitrary and capricious.   That is, that conclusion "runs counter to the evidence before the agency, [and/or] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."   *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mutual Automobile Ins. Co.*, 436 U.S. 29, 43 (1983).

1

Accordingly, coverage should be ordered.

2

**2.     A CGM Is "Durable Medical Equipment" / a "Blood Glucose Monitor"**

3

4

For the same reasons that the Secretary's position regarding "primarily and customarily

5

used to serve a medical purpose" is wrong, the Secretary's claim that a CGM is not "durable

6

medical equipment" and/or a "blood glucose monitor" is also wrong.  In each case, the Secretary

7

failed to perform the first step of statutory construction – determining if the statute is ambiguous

8

– and does not contend that the statute is ambiguous.  Thus, under the plain meaning of those

9

phrases a CGM is "durable medical equipment" / a "blood glucose monitor" and there is not

10

substantial evidence to support the Secretary's claim otherwise, the Secretary's position is

11

arbitrary and capricious, etc.

12

Indeed, with regard to "blood glucose monitor", the Secretary concedes that a CGM

13

14

measures something correlated with blood glucose[4] and, thereby, indirectly measures blood

15

glucose itself.  Opp. at 6.  As Mrs. Zieroth noted in her opening papers, there is no basis for

16

changing the statutory phrase of "blood glucose monitor" to "*direct* blood glucose monitor."  In

17

addition to the above, in light of the Secretary's concession, there is no basis to conclude that a

18

CGM is anything other than a "blood glucose monitor" within the meaning of 42 U.S.C. §

19

1395x(n) and coverage should be ordered.

20

**3.     The Secretary's New Rationales For Denying Coverage Must Be Rejected**

21

22

The Secretary's opposition offers a rationale for denying Mrs. Zieroth's claim that is not

23

the basis of the Council decision being appealed.  The Council decision denying Mrs. Zieroth's

24

claim was founded on the allegation that a CGM is not "primarily and customarily used to serve

25

a medical purpose" because it does not meet the construction of that phrase set forth in CMS

26

27

---

[4] That is, glucose coming from the blood on the way to the cells in the "interstitial fluid."

28

1682-R.  CAR11-13.  By contrast, the Secretary's opposition asserts that Mrs. Zieroth's CGM should not be covered because it is allegedly not as accurate as other devices.  Opp. at 5-7.  That is a different rationale than that offered by the Council.

"It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency."  *State Farm*, 436 U.S. at 50; *Snoqualmie Indian Tribe v. F.E.R.C.*, 545 F,3d 1207, 1212 (9th Cir. 2008) ("An agency's decision can be upheld only on the basis of the reasoning in that decision."); *Doe v. Wolf*, 2020 WL 3128874 at *7 (N.D. Cal. June 12, 2020) (Ryu, J.) ("Defendants' positions suffer from a fatal flaw: they are being raised for the first time in this lawsuit, and do not reflect the reasoning provided by the agency in the first instance.").  Thus, the Secretary's post-hoc rationalization for denying Mrs. Zieroth's claim should be rejected.

Even so, the Secretary's new position is still without merit.  Simply put, alleged accuracy has nothing to do with whether a device is "durable medical equipment", is "primarily and customarily used to serve a medical purpose", and/or is a "blood glucose monitor."  By way of example, the scale in your bathroom may be less accurate than the one at the doctor's office.  Nevertheless, they are still both "scales" and "primarily and customarily used" to measure weight.  Likewise, that a finger stick is allegedly more accurate than a CGM, does not make a CGM less durable or used for some purpose other than a medical one.

## C.   Coverage Should Be Ordered

As noted in Mrs. Zieroth's motion for summary judgment and reflected in the Record, the Secretary (in the form of his representative – the Center for Medicare and Medicaid Services (CMS)) chose not to participate in the hearings held by ALJ Midgley on the claims at issue.

Mot. at 5; CAR1679, CAR867, CAR048.   Thereafter, ALJ Midgley ruled in Mrs. Zieroth's favor.

Pursuant to the Secretary's own regulations, in such a situation, the Council may review an appeal on so-called "own motion review" but:

> The Council will accept review if the decision or dismissal contains an error of law material to the outcome of the case or presents a broad policy or procedural issue that may affect the general public interest.  In deciding whether to accept review, *the Council will limit its consideration of the ALJ's or attorney adjudicator's action to those exceptions raised by CMS.*

*See* 42 C.F.R. § 405.1110(c)(2) (emphasis added).   As noted in Mrs. Zieroth's motion for summary judgment, the "exceptions" raised by CMS were limited to the alleged misapplication of CMS 1682-R and no other reason.  Mot. at 5; CAR38-47.  Thus, pursuant to 42 C.F.R. § 405.1110(c)(2), Council review was, and is, limited to the alleged misapplication of CMS 1682-R.

If this Court determines that either CMS 1682-R issued improperly (and, therefore that a rejection based on it was improper) or that the idea that a CGM is not "primarily and customarily used to serve a medical purpose" / "durable medical equipment" / a "blood glucose monitor" is not supported by substantial evidence, is arbitrary and capricious, etc., on remand it would be improper for the Council to consider any basis for rejecting Mrs. Zieroth's claim.  That is, it would violate 42 C.F.R. § 405.1110(c)(2) for the Council to consider any other grounds for rejecting Mrs. Zieroth's claim.  Accordingly, Mrs. Zieroth's claim would have to be granted and a remand for any substantive consideration would be an act of futility.  Pursuant to 42 U.S.C. § 405(g) (fourth sentence), coverage should simply be ordered.

The Secretary's request for a remand "so that the Secretary can decide Mrs. Zieroth's claim without reference to the disputed Ruling" (Opp. at 5) is simply a request that the Secretary be given a chance to violate his own regulations and needlessly prolong the litigation.  Clearly,

that would be improper and remanding when the result is dictated would be needless and futile. Indeed, this is not the first Court to consider (and reject) the Secretary's request for a remand so that the Secretary has an opportunity to violate his own regulations.  *See Maupin v. Azar*, 424 F.Supp.3d 830, 838-39 (C.D. Cal. 2019) (Fitzgerald, J.) (refusing to remand for substantive consideration when appeal to Council was on limited grounds that were reversed).  *See also N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969) ("To remand would be an idle and useless formality.  *Chenery* does not require that we convert judicial review of agency action into a ping-pong game.").

Because CMS' referral was limited to the issue of alleged improper application of CMS 1682-R, if this Court grants Mrs. Zieroth's motion substantively, pursuant to 42 U.S.C. § 405(g) (fourth sentence), a substantive remand would be futile.  Accordingly, coverage should be ordered and this matter remanded to the Secretary solely for payment.

## II.    CONCLUSION

For the reasons set forth above, this Court grant summary judgment that CMS 1682-R issued in violation of law and that, therefore, reliance on it to reject Mrs. Zieroth's claim was improper.  In addition or in the alternative, this Court should grant summary judgment that a CGM is covered "durable medical equipment" because it is "primarily and customarily used to serve a medical purpose", a "blood glucose monitor", and/or simply "durable medical equipment."  For any and for all of these reasons, the Court should order coverage and remand to the Secretary with instruction to pay Mrs. Zieroth's claim.

Dated:  August 10, 2020                    Respectfully submitted,

PARRISH LAW OFFICES

1

2
                            */s/  James C. Pistorino*

3
                            James C. Pistorino
                            *Attorneys for Plaintiff*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28