1  James C. Pistorino (SBN 226496)
     james@dparrishlaw.com
2  Parrish Law Offices
3  224 Lexington Dr.
   Menlo Park, CA  94025
4  Telephone: (650) 400-0043

5  Attorneys for Plaintiff

6

7              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
8

9  MR. GARY ZIEROTH as the representative of    )  Case No. 3:20-cv-00172-MMC
   the estate of MRS. SHARON ZIEROTH,           )
10                                              )
                                                )
11       *Plaintiff*                            )
                                                )
12       v.                                     )  PLAINTIFF'S BRIEFI IN SUPPORT OF
                                                )  MOTION FOR ATTORNEYS' FEES AND
13  ALEX AZAR, in his capacity as Secretary of the )  COSTS UNDER THE EQUAL ACCESS TO
   United States Department of Health and Human )  JUSTICE ACT
14  Services,                                   )
                                                )  Date:  November 20, 2020, 9:00am
15       *Defendant*                            )  Location:  Courtroom F, 15th Fl, 450 Golden
                                                )  Gate Ave, San Francisco, CA  94102
16                                              )
                                                )
17

18

19

20

21

22

23

24

25

26

27

28

---

**TABLE OF CONTENTS**

**I.     BACKGROUND** ............................................................................................. **2**

   **A.     LEGAL BACKGROUND** ......................................................................................2

      *1.     Paragraph (b) Fees*............................................................................................3

      *2.     Paragraph (d) Fees*............................................................................................4

   **B.     FACTUAL BACKGROUND** .................................................................................5

**II.     DISCUSSION** ............................................................................................. **7**

   **A.     MRS. ZIEROTH WAS THE "PREVAILING PARTY"** ..................................8

   **B.     PARAGRAPH (B) FEES** ......................................................................................8

      *1.     The Secretary's Position Before the Agency and in the  Litigation Was Knowingly/Recklessly Frivolous* ......................................................................................................8

      *2.     Itemized Statement* ...........................................................................................10

      *3.     An EAJA Award Furthers the Purposes of the Statute* .........................................11

   **C.     PARAGRAPH (D) FEES** ......................................................................................12

      *1.     Mrs. Zieroth Was the "Prevailing Party"*..........................................................12

      *2.     Mrs. Zieroth Is Eligible for an EAJA Award* .....................................................12

      *3.     Itemized Statement* ...........................................................................................12

      *4.     The Secretary's Position Was Not Substantially Justified*.....................................12

      *5.     A Rate Enhancement is Appropriate* ..................................................................12

      *6.     There are No "Special Circumstances"*...............................................................13

**III.     CONCLUSION** ......................................................................................... **13**

# TABLE OF AUTHORITIES

**Cases**

*Ardestani v. I.N.S.*,
    502 U.S. 129 (1991) ................................................................................................ 2

*Bloom v. Azar*,
    2018 WL 583111 (D. Vermont, January 29, 2018) ............................................... 6

*Bloom v. Azar*,
    Case No. 16-cv-121 (D. Vermont Jan. 16, 2019)................................................... 8

*Brown v. Sullivan*,
    916 F.2d 492 (9th Cir. 1990)................................................................................. 4

*Finigan v. Burwell*,
    189 F.Supp.3d 201 (D. Mass. 2016) ..................................................................... 6

*Gutierrez v. Barhart*,
    274 F.3d 1255 (9th Cir. 2001)............................................................................... 5

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ............................................................................................ 3, 5

*I.N.S. v. Jean*,
    496 U.S. 154 (1990) .............................................................................................. 3

*Ibrahim v. D.H.S.*,
    912 F.3d 1147 (9th Cir. 2019) (*en banc*)...................................................... 2, 3, 11, 13

*Kerin v. U.S.P.S.*,
    281 F.3d 185 (2nd Cir. 2000) ................................................................................ 3

*Lewis v. Azar*,
    308 F.Supp.3d 574 (D. Mass. 2018) ..................................................................... 7

*Lewis v. Azar*,
    370 F.Supp.3d 267 (D. Mass. 2019) ..................................................................... 8

*Lewis v. Azar*,
    Case No. 18-cv-2929
    (pending in the United States District Court for the District of Columbia) ............ 12

*Li v. Keisler*,
    505 F.3d 913 (9th Cir. 2007)................................................................................. 2

*Olsen v. Azar*,
  Case No. 19-cv-3814
  (pending in the United States District Court for the District of Columbia) .............................. 12

*Pierce v. Underwood*,
  487 U.S. 552 (1988) ........................................................................................................... 5

*Rodriguez v. U.S.*,
  542 F.3d 704 (9th Cir. 2008) ........................................................................................ 4, 10

*Scarborough v. Principi*,
  541 U.S. 401 (2004) ........................................................................................................... 6

*Thangaraja v. Gonzalez*,
  428 F.3d 870 (9th Cir. 2005) .............................................................................................. 15

*Whitcomb v. Azar*,
  Case No. 17-cv-14 (E.D. Wisc. June 12, 2018) ............................................................... 7

*Whitcomb v. Hargan*,
  Case No. 17-cv-14 (E.D. Wisc. Oct. 26, 2017) ................................................................ 6

**Statutes**

28 U.S.C. § 2412 ...................................................................................................................... 2

28 U.S.C. § 2412(b) ............................................................................................................. 1, 3

28 U.S.C. § 2412(d)(2)(A) .................................................................................................... 12

28 U.S.C. 2412(d)(2)(B)(ii) .................................................................................................. 12

**Other Authorities**

DAB No. CR4596 (2016).  2016 WL 2851236 ....................................................................... 5

Plaintiff, Mr. Gary Zieroth, as the representative of the estate of Mrs. Sharon Zieroth (hereinafter "Mrs.Zieroth"), files this motion for an award of his attorneys' fees and costs pursuant to the Equal Access to Justice Act (EAJA).  *See* 28 U.S.C. § 2412(b) and (d).[1]  Counsel for the parties met and conferred on October 2, 2020 and agreement was not reached.  As detailed below, the Secretary's position in this case was frivolous and/or not substantially justified.

This is exactly the kind of case for which an EAJA award is justified.  For more than three years, the Secretary denied Mrs. Zieroth's CGM claims on the frivolous ground that a CGM is not "primarily and customarily used to serve a medical purpose."  The Secretary did so though:

1) his position was and is at odds with reality and it is "obviously wrong";

2) there has never been any evidence or rational basis for his position;

3) three United States district courts told the Secretary his position was "unreasonable", "arbitrary and capricious", "no evidence supports", "no reasonable person would be satisfied by", and had "no reasonable basis";

4) three United States district courts awarded attorneys' fees against the government for forcing Medicare beneficiaries to litigate the issue; and

5) the actual evidence in Mrs. Zieroth's case showed that the CGM had the "dramatic" effect of preventing hypoglycemic events requiring treatment at the Emergency Room.

Indeed, the Secretary's commitment to the frivolous position has been so strong that the Secretary actually reversed ALJ Midgley's decision in Mrs. Zieroth's favor to assert that a CGM is not "primarily and customarily used to serve a medical purpose."  Having denied coverage

---

[1] With regard to costs, the only cost was the filing fee.  In accordance with Local Rule 54-1, a bill of costs was filed on October 2, 2020.  *See* Dkt. #36.  Nevertheless, in the event that costs must be requested through the EAJA process, Mrs. Zieroth requests the filing fee cost be included herein.

during Mrs. Zieroth's lifetime on the frivolous grounds, the Secretary forced Mrs. Zieroth's grieving husband to engage in posthumous litigation which the Secretary then sought to delay and protract.

This is exactly the kind of case for which an EAJA award is justified.[2]

## I.     BACKGROUND

### A.     Legal Background

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby deter the unreasonable exercise of Government authority." *See Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991).

Moreover, "[t]he policy behind the EAJA is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and thereby forced the litigant to seek relief from a federal court." *See Ibrahim v. D.H.S.*, 912 F.3d 1147, 1167 (9th Cir. 2019) (*en banc*) (*citing Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007)).

The EAJA has two relevant provisions – 28 U.S.C. § 2412, paragraphs (b) and (d).  These provisions are separate and distinct and "stand completely apart." *See, e.g., Kerin v. U.S.P.S.*, 281 F.3d 185, 189 (2nd Cir. 2000).

Under either paragraph of the statute, a prevailing party may obtain compensation for all aspects of the litigation, including fees incurred in litigating the fee petition. *See, e.g., I.N.S. v. Jean*, 496 U.S. 154, 162, 163 n. 10 (1990).  In determining the amount of a fee, the court should

---

[2] As this Court noted in its decision, Mrs. Zieroth's CGM had the "dramatic" effect of preventing hypoglycemic events that required transport to and treatment at the Emergency Room. *See* Dkt. #34 at 6.  All of those expenses are covered by Medicare and cost several thousand dollars for each event.   Many diabetics with hypoglycemic unawareness suffer multiple events each month/year.   Thus, even ignoring the human cost of each event (permanent physiological impairments), from a sheer financial perspective, using CGMs saves money.

1  determine the number of hours reasonably expended in the litigation multiplied by a reasonable

2  hourly rate.  *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

3         **1.       Paragraph (b) Fees**

4         Pursuant to 28 U.S.C. § 2412(b):

5

6         Unless expressly prohibited by statute, a court may award reasonable fees and
       expenses of attorneys, in addition to the costs which may be awarded pursuant to
       subsection (a), to the prevailing party in any civil action brought by or against the

7         United States or agency or any official of the United States acting in his or her
       official capacity in any court having jurisdiction of such action.  The United

8         States shall be liable for such fees and expenses to the same extent that any other

9         party would be liable under the common law or under the terms of any statute
       which specifically provides for such an award.

10

11  Section 2412(b) incorporates the common law exceptions to the American rule on attorneys'

12  fees.  The most recent case from the Ninth Circuit concerning fees under paragraph (b) is

13  *Ibrahim v. D.H.S.*, 912 F.3d 1147 (9th Cir. 2019) (*en banc*), where a comprehensive review was

14  undertaken.

15         As explained, under the common law, a court may assess attorneys' fees against the

16  government if the government has "acted in bad faith, vexatiously, wantonly or for oppressive

17  reasons."  *Id*. at 1180.  "[I]n evaluating whether the government acted in bad faith, a court may

18  examine the government's actions that precipitated the litigation, as well as the litigation itself."

19

20  *Id*.  "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a

21  frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  *Id.*

22  To make a bad faith determination, the court must review the totality of the government's

23  conduct.  *Id*. at 1181.  "However, it is unnecessary to find that every aspect of a case is litigated

24  by a party in bad faith in order to find bad faith by that party."  *Id*.  "The district court may award

25  attorney fees at market rates for the entire course of litigation, including time spent preparing,

26

27  defending, and appealing the two awards of attorneys, if it finds that the fees incurred are in

28

some way traceable to the government's bad faith." *Id*. at 1180 (internal citations and quotations omitted).

For example, in *Brown v. Sullivan*, 916 F.2d 492 (9th Cir. 1990) the "cumulative effect" of the Social Security Appeals Council's failures constituted bad faith and an award of fees at market rates. *Id.* at 496.

A "frivolous" argument is one that is "groundless" or "obviously wrong." *See Rodriguez v. U.S.*, 542 F.3d 704, 710 (9th Cir. 2008). An argument is "groundless" if it is "destitute of foundation, authority, or support; having no real cause or reason; unfounded." *Id*.

### 2.    Paragraph (d) Fees

Pursuant to 28 U.S.C. § 2412(d):

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to substation (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

"Substantially justified" means "justified in substance or in the main – that it, justified to a degree that could satisfy a reasonable person." *See Pierce v. Underwood*, 487 U.S. 552, 565 (1988). A substantially justified position must have a reasonable basis both in law and in fact. *See, e.g., Gutierrez v. Barhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). As explained in *Hensley*:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended in the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 451 U.S. at 435 (internal citations omitted).

An EAJA fee petition under paragraph (d) must include: 1) a showing that the applicant is a prevailing party; 2) a showing that the applicant is eligible to receive an award; 3) an itemized statement containing time expended and rates charged; and 4) an allegation that the position of the United States was not substantially justified.  *Scarborough v. Principi*, 541 U.S. 401, 408 (2004).

**B.      Factual Background**

A timeline summarizing events may assist the Court.

| Date | District Court and Other Activity | Activity on Mrs. Zieroth's Claims |
|---|---|---|
| April 29, 2016 | H.H.S. Civil Remedies Division holds that the Secretary's position does not pass the "reasonableness standard."  *See* DAB No. CR4596 (2016).  2016 WL 2851236. | |
| May 19, 2016 | *Finigan* court calls Secretary's position "head scratching."  *Finigan v. Burwell*, 189 F.Supp.3d 201, 207 n. 6 (D. Mass. 2016). | |
| July 21, 2017 | | Mrs. Zieroth's CGM claim rejected.  CAR787. |
| October 26, 2017 | *Whitcomb* court calls Secretary's position "unreasonable", "arbitrary and capricious."  *Whitcomb v. Hargan*, Case No. 17-cv-14 at 12, 14 (E.D. Wisc. Oct. 26, 2017). | |
| January 5, 2018 | | Mrs. Zieroth's CGM claim rejected.  CAR1672. |
| January 29, 2018 | *Bloom* court: "no evidence supports the MAC's conclusion that a CGM is not 'primarily and customarily used to serve a medical purpose.'"  *Bloom v. Azar*, 2018 WL 583111 at *10 (D. Vermont, January 29, 2018). | |
| April 5, 2018 | *Lewis* court: "The Food and Drug Administration, the National Institutes of Health and multiple professional medical societies such as the American Diabetes Association and the American Medical Association deem CGM primarily and customarily to serve a medical purpose as | |

| | | |
|---|---|---|
| | a medical device.", "Council's decision that CGM devices are not primarily and customarily used to serve a medical purpose constituted legal error and was not supported by substantial evidence." *Lewis v. Azar*, 308 F.Supp.3d 574, 578-79 (D. Mass. 2018). | |
| May 22, 2018 | | Mrs. Zieroth's CGM claim rejected.  CAR548-49. |
| May 30, 2018 | | Mrs. Zieroth's CGM claim rejected.  CAR1665-66. |
| June 12, 2018 | *Whitcomb* court: "no reasonable basis for arguing that continuous glucose monitors are not primarily and customarily used to serve a medical purpose."; "demonstrates the unreasonableness of the Secretary's position."; fees awarded.  *Whitcomb v. Azar*, Case No. 17-cv-14 at 4, 6 (E.D. Wisc. June 12, 2018). | |
| June 15, 2018 | By this date, more than 40 ALJs had rejected the Secretary's position more than 55 times.  *See* https://dparrishlaw.com/parrish-law-offices-wins-significant-victory-for-cgm-users/ | |
| June 22, 2018 | | Mrs. Zieroth's CGM claim rejected.  CAR856. |
| December 5, 2018 | | Mrs. Zieroth's CGM claim rejected.  CAR2099-2100. |
| January 16, 2019 | *Bloom* court: "no reasonable person would be satisfied by the Secretary's position that CGMs are not primarily and customarily used to serve a medical purpose."; fees awarded (precise amount not decided).  *Bloom v. Azar*, Case No. 16-cv-121 at 10 (D. Vermont Jan. 16, 2019). | |
| January 17, 2019 | | Mrs. Zieroth's CGM claims rejected.  CAR493, CAR1274. |
| February 19, 2019 | | Mrs. Zieroth's CGM claim rejected.  CAR2087. |
| August 5, 2019 | | ALJ Midgley issues decision approving all of Mrs. Zieroth's CGM claims. |
| March 30, 2019 | *Lewis* court: "breadth of decisions contrary to the Secretary's position | |

| | | |
|---|---|---|
| | demonstrates a 'string of losses'"; fees awarded. *Lewis v. Azar*, 370 F.Supp.3d 267, 273 (D. Mass. 2019). | |
| December 18, 2019 | | With actual knowledge of the *Whitcomb* and *Bloom* decisions, the Councilreverses ALJ Midgley, holding that a CGM is not "primarily and customarily used to serve a medical purpose", and denies Mrs. Zieroth's claims. CAR11-12. |
| January 8, 2020 | | Mrs. Zieroth files this suit. |
| May 1, 2020 | | The Secretary Answers the Amended Complaint denying that a CGM is durable medical equipment. |
| May 22, 2020 | | Mrs. Zieroth moves for summary judgment. |
| June 15, 2020 | | The Secretary seeks a 90-day extension to respond to Mrs. Zieroth's motion for summary judgment; a 45-day extension is granted. |
| August 3, 2020 | | The Secretary opposes Mrs. Zieroth's motion for summary judgment and moves for summary judgment that a CGM is not durable medical equipment. |

## II.    DISCUSSION

Mrs. Zieroth believes that it is important that fees be awarded under EAJA paragraph (b) (*i.e.*, the "bad faith" provision). Three prior decisions and awards of attorneys' fees have not deterred the Secretary from asserting the frivolous position. Without a finding that the Secretary's position is frivolous (and payment of market rate attorneys' fees), it is to be expected that the Secretary will continue use the frivolous position to force elderly and ill beneficiaries

into multi-year efforts to obtain the coverage commanded by Congress, if they are able to obtain representation.  This has to stop.

Fees are also available under EAJA paragraph (d).  However, as indicated above, three prior District Court decisions awarding fees under this provision have not effectuated the EAJA's deterrence goal.

**A.      Mrs. Zieroth Was The "Prevailing Party"**

Clearly, Mrs. Zieroth was the "prevailing party."  Mrs. Zieroth's claim for coverage and related request for a determination that a CGM is durable medical equipment was fully vindicated.  During the meet and confer held on October 2, 2020, the Secretary stipulated that Mrs. Zieroth was the prevailing party.

**B.      Paragraph (b) Fees**

**1.      The Secretary's Position Before the Agency and in the Litigation Was Knowingly/Recklessly Frivolous**

The Secretary's base position has been that a CGM is not "primarily and customarily used to serve a medical purpose."  On its face, that position has been, and is, frivolous.  No rational person could ever come to that conclusion (much less defend it for more than three years as the Secretary has done in this case since the first denial of Mrs. Zieroth's claim in July 2017).

There has never been a scintilla of support for the Secretary's position.  No doctor, study, professional organization, industry party/group or competent authority of any kind has ever supported that claim.  Indeed, as the *Lewis* court recognized, the authorities are uniformly on the other side.  Further, as the *Whitcomb* and *Bloom* courts commented, through years of litigation the Secretary has never identified a non-medical use for a CGM.  Thus, the Secretary's position was and is, literally, "destitute of foundation, authority, or support, having no real cause or

reason; unfounded"/"obviously wrong." *Rodriguez*, 542 F.3d at 710. The Secretary's position was, and is, frivolous.

Beyond the frivolous nature of the position itself, the fact that the Secretary continued to advance this position even after being told (multiple times) that the position was baseless is further evidence that the Secretary's position was/is frivolous and knowingly/recklessly so.

The knowingly/recklessly frivolous nature of the Secretary's position is aptly demonstrated by the fact that by December 2019, the *Whitcomb* and *Bloom* courts had already described the Secretary's position as "unreasonable", "arbitrary and capricious", a position that "no evidence supports", "no reasonable basis for arguing", "no reasonable person would be satisfied by." Nevertheless, with actual knowledge of the *Whitcomb* and *Bloom* decisions, the Secretary affirmatively chose to reverse ALJ Midgley and held that a CGM is not "primarily and customarily used to serve a medical purpose." *See* CAR12. That position meets the definition of "frivolous" set forth in *Rodriguez*.

Thereafter, in this litigation, the Secretary Answered on May 1, 2020, denying that a CGM was durable medical equipment, sought to delay resolution, and then offered a different rationale for denying coverage than the basis articulated by the agency. As Mrs. Zieroth pointed out in her papers, the Supreme Court, Ninth Circuit, and other courts in this district have uniformly rejected efforts to uphold agency decisions on bases other than that articulated by the agency. *See* Dkt. #32 at 10. Given the uniform rejection of the Secretary's attempt to change the basis for denial, this Court certainly could find that it was frivolous and, at least, recklessly made. However, this Court need not reach that issue because "it is unnecessary to find that every aspect of a case is litigated by a party in bad faith in order to find bad faith by that party." *Ibrahim*, 912 F.3d at 1181. Thus, a bad faith finding by this Court may be founded on *both* the

position before the agency and the position in the litigation *or* solely on the position before the agency that gave rise to this litigation.  *Id.* at 1180 ("[I]n evaluating whether the government acted in bad faith, a court may examine the government's actions that precipitated the litigation, as well as the litigation itself.").

Lest this Court think that the Secretary's frivolous position in this case was a one-time mistake, the Court should know that Mrs. Zieroth has multiple claims currently in the appeal process where the claims are rejected on these same discredited grounds.  Further, to Plaintiff's knowledge there are at least two pending district court actions where the Secretary has denied claims on the same grounds.  *See Olsen v. Azar*, Case No. 19-cv-3814 (pending in the United States District Court for the District of Columbia) (diabetic kidney transplant recipient who needs CGM to, *inter alia*, protect transplanted kidney, denied on grounds CGM not "primarily and customarily used to serve a medical purpose"); *Lewis v. Azar*, Case No. 18-cv-2929 (pending in the United States District Court for the District of Columbia) (class action challenging denials on the grounds that a CGM is not "primarily and customarily used to serve a medical purpose").

Thus, rather than a one-time, unknowing mistake of asserting a frivolous argument, the Secretary has made a deliberate decision to advance the frivolous argument.

### 2.  Itemized Statement

An itemized statement of the fees incurred is attached as Exhibit A.  As reflected there, fees through the date of the Court's decision in Mrs. Zieroth's favor totaled $37,805 reflecting 69.35 hours billed at $525-550/hour.  Although not required, in the interests of providing the Court with all potentially relevant information, attached as Exhibit B is the curriculum vitae of the undersigned counsel.  Upon completion of the briefing, Mrs. Zieroth will supplement this exhibit to reflect the fees incurred in the fee petition briefing.

### 3.   An EAJA Award Furthers the Purposes of the Statute

As detailed above, the EAJA has two purposes: 1) to eliminate the financial disincentives for people to vindicate their rights against unreasonable/unjustified government action; and 2) to deter the government from taking unreasonable/unjustified actions.   Both of those purposes would be served by a fee award in this case.

First, the actual amount of the denied claims in this case is ~$4,000 while the litigation costs, so far, are ~$38,000.   Thus, absent the availability of an EAJA award, no rational economic actor would have litigated this matter and the unreasonable/unjustified government action would have gone unchallenged.   In this regard, the EAJA:

> [R]ests of the premise that a party who choose to litigate an issue against the Government is not only representing his or her own vested interest but is also refining and formulating public policy.   An adjudication or civil action provides a concrete, adversarial test of Government regulations and thereby insures the legitimacy and fairness of the law.

*Ibrahim*, 912 F.3d at 1178 (internal citations and quotations omitted).

Second, absent an EAJA award, there will be no deterrence against the government continuing to reject claims on the frivolous grounds that a CGM is not "primarily and customarily used to serve a medical purpose."   Three prior awards of attorneys' fees did not deter the government from denying Mrs. Zieroth's claims on the same frivolous grounds. Indeed, the Secretary appears perfectly happy to knowingly assert the same frivolous position and, at worst, pay below market rates if litigation should occur.[3]   Thus, Mrs. Zieroth believes that only a bad faith finding and an award of attorneys fees at market rates has any prospect of deterring the Secretary going forward (including on Mrs. Zieroth's pending claims).

---

[3] Each time attorneys recoup only below market rates, they are going to be less likely to take on a matter.   Thus, the availability of counsel to litigate CGM cases will be reduced and beneficiaries will be forced to self-fund litigation or simply endure unreasonable government actions.   Of course, the EAJA was enacted to avoid just that result.

**C.      Paragraph (d) Fees**

If the Court determines that fees are appropriate under paragraph (b), then no further analysis is necessary.  Alternatively, fees are available under paragraph (d).  Mrs. Zieroth tracks the requirements of *Scarborough*.

       **1.      Mrs. Zieroth Was the "Prevailing Party"**

As detailed above, Mrs. Zieroth was the "prevailing party."

       **2.      Mrs. Zieroth Is Eligible for an EAJA Award**

EAJA awards under paragraph (d) are available to private litigants with a net worth not exceeding $2,000,000.  *See* 28 U.S.C. 2412(d)(2)(B)(ii).  Mr. Zieroth, as the representative of Mrs. Zieroth's estate, is submitting a declaration to verify Mrs. Zieroth's eligibility.  Exhibit C.  Mrs. Zieroth's net worth never exceeded $2,000,000.  Consequently, Mrs. Zieroth is eligible to collect fees and costs under the EAJA.

       **3.      Itemized Statement**

As detailed above, an itemized statement is attached as Exhibit A.

       **4.      The Secretary's Position Was Not Substantially Justified**

For the same reasons that the Secretary's position was frivolous, the Secretary's position was not substantially justified.

       **5.      A Rate Enhancement is Appropriate**

Pursuant to 28 U.S.C. § 2412(d)(2)(A), attorneys fees in excess of $125/hour may be awarded under paragraph (b) if the court determines that an increase in the cost of living or some other factor justified a higher rate.

As set forth in *Thangaraja v. Gonzalez*, 428 F.3d 870 (9th Cir. 2005), the increase in the cost of living is calculated by dividing the Consumer Price Index (CPI) for the present time by the CPI in March 1996 (when the EAJA was enacted) and multiplying the ratio by the $125

1    statutory rate. *Id*. at 876-77. As reported by the Bureau of Labor Statistics, the CPI-U for the

2    San Francisco region in August 2020 was 300.2, while the CPI-U for the same region in March

3    1996 was 152.9. This gives a multiplier of 1.96. Multiplying this by the statutory rate of

4    $125/hour gives a cost of living rate of $245/hour. Multiplying this by number of hours, so far,

5    results in a fee of $16,990.75.[4]

6

7       **6.      There are No "Special Circumstances"**

8       There are no "special circumstances" that would make an EAJA award unjust.

9                        **III.      CONCLUSION**

10       For the reasons set forth above, the Court should find that the Secretary's position was

11   frivolous and award the requested fees under paragraph (b).

12   Dated: October 10, 2020                          Respectfully submitted,

13

14                                                   PARRISH LAW OFFICES

15

16                                                   */s/ James C. Pistorino*_____
                                                     James C. Pistorino
17                                                   *Attorneys for Plaintiff*

18

19

20

21

22

23

24

25   _____

26   [4] It is unclear from *Thangaraja v. Gonzalez* whether a regional or national CPI-U should be used.
     If a national CPI-U is appropriate, then using the Ninth Circuit's published rate of $206.77 for
27   the first half of 2020 results in a total fee of $14,339.50. See
     https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039
28