James Bickford (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Attorney for Defendant*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY ZIEROTH, as representative of the estate of SHARON ZIEROTH,<br><br>Plaintiff,<br><br>v.<br><br>ALEX M. AZAR II, in his official capacity as Secretary of Health and Human Services,<br><br>Defendant. | Case No. 3:20-cv-172 (MMC)<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES**<br><br>Date: November 20, 2020, 9:00am<br><br>Location: Courtroom F, 15th Floor, 450 Golden Gate Avenue, San Francisco, CA<br><br>Judge: Honorable Maxine M. Chesney |

Plaintiff has prevailed in this case, and now seeks fees under the Equal Access to Justice Act (EAJA).  No EAJA fees are available when the government's position is substantially justified, and fees are capped at a statutory rate unless the government has acted in bad faith.  Plaintiff seeks approximately $38,000 under the bad faith provision, though the statutory rate would produce less than $14,000 in fees.  For the reasons explained below, the Secretary's position that less accurate continuous glucose monitors (CGMs) are not covered by Medicare did not demonstrate bad faith—and indeed, was substantially justified.  Plaintiff's motion should be denied.

1

**ARGUMENT**

Plaintiff seeks compensation for approximately 70 hours of legal work in prosecuting this case. The Secretary does not dispute that Plaintiff prevailed here, nor (for the most part) that the hours worked were reasonable.[1] There are two chief questions for the Court to decide on this motion. First, did the Secretary act in bad faith in denying Plaintiff's claim at the administrative level and defending that decision in this Court? If so, Plaintiff is entitled to the extraordinary remedy of payment at counsel's full market rate. Second, was the Secretary's position substantially justified? If not, Plaintiff is entitled to the normal remedy on an EAJA petition: payment for counsel at the statutory rate, adjusted for increases in the cost of living.

**A.     The Secretary acted in good faith.**

Under the common law as incorporated by EAJA, 28 U.S.C. § 2412(b), "a court may assess attorneys' fees against the government if it has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Ibrahim v. DHS*, 912 F.3d 1147, 1180 (9th Cir. 2019) (en banc) (quoting *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008)). Unlike standard EAJA fees, bad-faith fees may be awarded at counsel's market rate. *See Brown v. Sullivan*, 916 F.2d 492, 497 (9th Cir. 1990). But "[t]he bad faith requirement sets a high threshold" for the award of such fees. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997); *see Fink v. Gomez*, 239 F.3d 989, 991–95 (9th Cir. 2001). And it is the moving party's burden to demonstrate that the government's conduct crossed that threshold. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015).

---

[1] Plaintiff claims 2.4 hours worth of attorneys' fees for "delivering chambers copy of pleadings." Mot., Ex. A, ECF No. 37-2 at 4 (entry for Jan. 16, 2020). It was not reasonable for an attorney billing at an attorney's rate to perform this administrative task, and these hours should therefore be excluded.

1    Plaintiff contends that the Secretary's position in this case and below was sanctionably
2    "frivolous." Mot. at 8–10; *see Ibrahim*, 912 F.3d at 1180; *Primus*, 115 F.3d at 649. A legal
3    position is frivolous if it is "foreclosed by binding precedent" or "obviously wrong." *United*
4    *States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir. 2003) (quotation omitted).
5    No binding precedent bars the Secretary's position, so Plaintiff is left to argue that it is obviously
6    wrong.
7    As this Court is aware, the Secretary's position is that continuous glucose monitors are
8    only covered as durable medical equipment by Medicare Part B if they are accurate enough to
9    guide treatment decisions. CMS Ruling 1682-R at 8; AR 560. Less accurate devices, whose
10   readings must be confirmed by using a blood glucose monitor, are not covered under the
11   Secretary's position. *Id.* at 15; AR 567. To begin with, this is not a frivolous distinction. There
12   are more accurate and less accurate CGMs on the market, and it is entirely reasonable for the
13   Secretary to encourage the use of the more accurate devices. As the Secretary suggested in
14   summary judgment briefing, this might well have been accomplished through the establishment
15   of quality standards under 42 U.S.C. § 1395m(a)(20). But the Secretary has instead drawn this
16   reasonable distinction through an interpretation of the Medicare Act and its implementing
17   regulations.
18   The statutory definition of durable medical equipment, codified at 42 U.S.C. § 1395x(n),
19   "includes iron lungs, oxygen tents, hospital beds, and wheelchairs . . . used in the patient's
20   home," as well as "blood-testing strips and blood glucose monitors for individuals with diabetes"
21   among other specified items. (As the Secretary explained in his cross-motion, CGMs are not
22   "blood glucose monitors" within the meaning of the statute.) The regulatory definition requires
23   that a device be "primarily and customarily used to serve a medical purpose." 42 C.F.R.

§ 414.202.  The Secretary's position is that the "medical purpose" of a CGM is to enable a beneficiary to make treatment decisions, and that less-accurate CGMs do not serve that medical purpose.  *See* CMS Ruling 1682-R at 9; AR 561 ("The medically necessary function of a glucose monitor is to inform the patient about their glucose level so that they can make diabetes treatment decisions such as changing their diet or insulin dosage.").  The Secretary has sometimes described the less-accurate devices that do not serve this medical purpose as "adjunctive" or "precautionary."  *See* CMS Ruling 1682-R at 6–7, 14; AR 558–59, 566.  But the core of the Secretary's position is that certain CGMs do not effectively serve the medical purpose of that device.  This is not a frivolous view.

Nonetheless, as Plaintiff notes, the Secretary's position has now been rejected by four district courts, including this one.  In none of the earlier cases did the plantiffs suggest that the Secretary's position was frivolous—instead, they argued that Parrish Law Firm attorneys possessed a particular expertise entitling them to compensation at their full market rate as a "special factor" enhancement under 28 U.S.C. § 2412(d)(2)(A).  Courts have sometimes accepted that argument for Mr. Pistorino's colleague Debra Parrish, who did not appear in this case,[2] but the only court to consider the question as to Mr. Pistorino found that he does not possess "distinctive knowledge or specialized skill" justifying such a rate enhancement.  Order on Motion for EAJA Fees and Costs at 15, *Bloom v. Azar*, No. 5:16-cv-121, ECF No. 80 (D. Vt. Jan. 16, 2019) (concluding that "the record does not support a conclusion that [Mr. Pistorino]

---

[2] *See Lewis v. Azar*, 370 F.3d 267, 273 (D. Mass. 2019) (denying "special factor" enhancement for Ms. Parrish); Order on Motion for EAJA Fees and Costs at 15, *Bloom v. Azar*, No. 5:16-cv-121, ECF No. 80 (D. Vt. Jan. 16, 2019) (granting "special factor" enhancement for Ms. Parrish); Decision & Order Granting Plaintiff's Petition for Fees & Costs at 8, *Whitcomb v. Azar*, No. 2:17-cv-14, ECF No. 34 (E.D. Wisc. June 12, 2018) (granting "special factor" enhancement for Ms. Parrish).

possesses distinctive knowledge or specialized skill needful for this litigation"). In this case, as in those, Plaintiff seeks fees at counsel's market rate. But instead of arguing for a "special factor" enhancement, Plaintiff suggests frivolousness.

The Secretary's position here is, substantively, no more or less frivolous than it was in those earlier cases—and Plaintiff does not suggest otherwise. Yet Plaintiff argues that the accumulating weight of those decisions justifies a finding of frivolousness. The Supreme Court has said that although "the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified . . . a string of losses can be indicative." *Pierce v. Underwood*, 487 U.S. 552, 568 (1988); *see Meinhold v. U.S. Dep't of Defense*, 123 F.3d 1275, 1284 (9th Cir. 1997). But even if a "string of losses" sometimes indicates that a position may not be substantially justified, it certainly does not establish that the position is frivolous. Plaintiff offers no authority to the contrary.

The Secretary's view that the medical purpose of a CGM is to indicate a need for treatment, and that certain CGMs do not serve that purpose, does not begin to approach the "high threshold" for a finding of bad faith. *Primus*, 115 F.3d at 649. Nevertheless, the Secretary is conscious of the fact that several district courts have now ruled against him. And, as the Secretary has previously explained, he is "reconsidering his position on whether devices such as the continuous glucose monitor at issue here are durable medical equipment within the meaning of the Medicare statute and regulations," in light of these decisions. Bickford Decl. ¶ 3, ECF No. 25-1. The Secretary has twice candidly admitted as much to Plaintiff and this Court. *See also* ECF No. 30 at 7.

Yet Plaintiff has insisted on litigating this case to final judgment, refusing to consider any possibility of settlement. *See* Case Management Statement at 5, ¶ 12, ECF No. 19. Plaintiff has

opposed any extension of time to allow the Secretary's process of reconsideration (which remains ongoing) to bear fruit. And now Plaintiff suggests that the Secretary has proceeded in bad faith. This is not the "rare and exceptional" case where such a finding would be justified. *Primus*, 115 F.3d at 649 (quotation omitted). Plaintiff's request for fees under 28 U.S.C. § 2412(b) should be denied.[3]

**B.     The Secretary's position was substantially justified.**

EAJA "provides for an award of fees to a prevailing party in a suit against the United States unless the government's position was substantially justified." *United States v. Marolf*, 277 F.3d 1156, 1159 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)). "Substantially justified means justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 1161 (quoting *Pierce*, 487 U.S. at 565).

The Secretary's position—that continuous glucose monitors are only covered as durable medical equipment by Medicare Part B if they are accurate enough to guide treatment decisions, *see* CMS Ruling 1682-R at 8; AR 560—is sufficiently justified to satisfy a reasonable person, for substantially the reasons discussed above. As a matter of policy, the Secretary is well justified in withholding coverage from less accurate CGM devices to provide Medicare beneficiaries with an incentive to choose the more accurate devices, which are covered. The Secretary correctly concluded that less accurate CGMs are not primarily and customarily used to serve the medical purpose of enabling a beneficiary to make treatment decisions. CMS Ruling 1682-R at 9; AR 561; *see* 42 C.F.R. § 414.202. A reasonable person could be satisfied that this is the medical

---

[3] Although Plaintiff has similar cases pending in the administrative process, *see* Mot. at 10, those cases are irrelevant to the Court's analysis here. Unless the Secretary prevails on any appeal, the decision in this case will be *res judicata* as to Plaintiff, who will therefore be entitled to have the same issue in any other administrative appeals decided accordingly.

purpose of CGMs, and that less accurate devices such as the one at issue here therefore were not covered by Medicare Part B. For that reason, the Secretary's position was substantially justified and Plaintiff's request for fees under 28 U.S.C. § 2412(d) should be denied.[4]

## CONCLUSION

The Secretary's position in this case and in the proceedings below was far from frivolous, and indeed was substantially justified. Plaintiff's fee petition should be denied.[5]

Respectfully submitted this 26th day of October, 2020,

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

MICHELLE BENNETT
Assistant Director, Federal Programs Branch

 /s/ James Bickford
JAMES BICKFORD
Trial Attorney (N.Y. Bar No. 5163498)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
James.Bickford@usdoj.gov
Telephone: (202) 305-7632

*Counsel for Defendant*

---

[4] If the Court concludes that the Secretary's position was not substantially justified, fees under 28 U.S.C. § 2412(d) should be calculated to include the cost-of-living adjustment published on the Ninth Circuit website: $205.25/hour for work performed in 2019, and $206.77/hour for work performed in 2020. *See* Statutory Maximum Rates Under the Equal Access to Justice Act, *available at* https://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039. Plaintiff offers no support for the creative suggestion that a city-specific cost-of-living adjustment should be used instead. *Cf. Bell v. Berryhill*, 2018 WL 452110, at *3 (N.D. Cal. Jan 17, 2018) (Chesney, J.) (calculating EAJA cost-of-living adjustment by reference to the Ninth Circuit's published rates). Billing records indicate that Plaintiff's counsel worked 14.25 hours in 2019, for $2,924.81 in fees at the adjusted rate. In 2020, Plaintiff's counsel worked 55.1 hours, of which 2.4 should be excluded as unreasonable, *see supra* note 1, which produces $10,896.78 in fees at the 2020 adjusted rate for 52.7 hours of work, and $13,821.59 in total fees for the two years.

[5] If Plaintiff's fee petition is denied, the request for $400 in costs should also be denied. If fees are granted in any form, the Secretary does not dispute that an award of the requested costs would also be appropriate.